## THE BRITISH EMPIRE.

*(District Court, S. D. New York. July 3, 1885.)*

1. COLLISION—NAVIGATION—WHARVES AND SLIPS—STAY-LINES.
   Reasonable prudence and caution in moving heavy boats about wharves and slips in a high wind and strong tide require the use of stay-lines at bow and stern to prevent such boats from becoming unmanageable; and where a coal-boat, for want of such lines, became unmanageable from a sheer, caused by striking another boat in the slip, and swung against the propeller blades of a large steamer, and was sunk, *held*, those moving her were responsible for not using such lines.

2. COAL-BOATS CONSIGNED TO STEAMER—CUSTOM IN MOVING—STEVEDORES.
   The coal-boat J. R. W. was consigned along-side the steamer B. E. with coal for her use. On arrival the B. E. was not ready to receive it, and the J. R. W. lay by the wharf till the next day. The stevedore's men then undertook to move the coal-boat along-side, using a line to the steamer's steam-winch, the captain of the J. R. W. being aboard; from want of bow and stern lines the J. R. W. became unmanageable and went under the B. E.'s propeller and was sunk. *Held,* upon the evidence, that by the custom it was the duty of the stevedore's men to aid in getting the boat along-side; that their aid was not merely voluntary; that taking, in fact, most of the control, but not sole control, nor ousting the captain from suitable directions, both were answerable for want of proper caution, and the libelant recovered half his damages.

In Admiralty.

*Hyland & Zabriskie,* for libelant.

*A. O. Salter,* for claimant.

BROWN, J. On the third of January, 1884, the large steam-ship British Empire was lying in her slip at the north side of pier 3, on the North river. The libelant's canal-boat, John R. Weld, had been loaded with coal for the use of the steam-ship, and consigned along-side, and had been left in the slip by a tug the day before; but the steamer not being ready to receive the coal, the canal-boat was obliged to haul up along-side the pier under her stern. The next day, when the steamer was ready to receive the coal, it was attempted to haul her around by lines along-side. The wind being very high from the north-west and the tide strong ebb, a line from the steam-winch, forward on the steamer, was attached near the bows of the canal-boat, and the steam-power applied to pull her along. While moving up towards the steamer, the canal-boat came in contact with a barge, which was somewhat quartering in the slip and struck the starboard bow of the canal-boat. No injury to either was done by the blow; but a sheer was given to the canal-boat's bow, which, in combination with the ebb-tide and the high wind, rendered the canal-boat, for the time being, unmanageable, so that her stern swung under the stern of the steam-ship against her propeller blades, making two holes in the canal-boat, causing damage, for which this action was brought.

The evidence is extremely conflicting on every material fact. The captain of the canal-boat was the only person belonging to her who was previously aboard. She was moved mainly by the stevedore's men, who, by the stevedore's directions, went to assist in bringing

her along-side. The stevedore testified that he had previously notified the captain to bring her along-side, which the latter denies. It was contended, in behalf of the steamer, that the assistance of the stevedore's men was voluntary, and did not affect the ship, whether there was negligence or not on their part. I am satisfied, however, from the evidence in this case that it has become an established practice and usage, so as to form a part of the understanding in the dealings of the parties, that when coal-boats consigned along-side have to wait the convenience of the steamer, they shall be moved, when wanted, through the aid, if not through the entire control, of the stevedore's men. If boats, after being left in the slip by the tugs, are not sufficiently manned to be moved without additional help, it is for the interest of the steamer that this help should be rendered by her own men when wanted, rather than to call in outside aid. In the long run, all such expenses must be borne by the steamers. Their acts, under such a custom as is proved, cannot, therefore, be held to be voluntary only, but rendered in the service of the ship, and for her benefit in procuring her supplies. In this case, moreover, the steam-power of the ship was applied to move the boat, under the supervision of one of her officers. If there was negligence on their part, the ship must therefore be held answerable.

The principal fault which led to the accident was, I think, in undertaking to move this loaded canal-boat in the slip, under the circumstances of a high wind and a strong ebb-tide, without the use of any additional bow and stern lines as stays to keep her in place. Without these she was liable to become uncontrollable by any slight mishap; and in not making use of these precautions, there was a want of reasonable care and prudence. It is evident from the testimony that the stevedore's men took the principal charge of moving the boat; and the steamer must therefore be held responsible for the lack of suitable precautions against accident. It would seem that the barge with which the canal-boat came into collision was moved across from the other side of the slip to the steamer at about the same time that the canal-boat was moved, and by the direction of some persons on the steamer. The evidence is so conflicting that it is difficult to get at the exact facts. She clearly had crossed the line of the canal-boat's approach. But their collision did no harm; and it would not have been followed by the subsequent collision with the propeller blades, or by any damage, had the movements of the canal-boat been properly guarded and controlled by stay-lines. The absence of these should therefore be deemed the chief negligence in the case.

The captain of the canal-boat cannot be wholly excused for the absence of such precautions, because it does not appear that he made any effort to protect his boat and keep her under control. He was at least equally familiar with the liabilities to accident in the slip, with the unwieldy character of his boat, her liability to take a sheer,

and the need of protecting lines to steady her movements. He gave some orders in regard to his boat. He was not ousted from all control of her; and it does not appear that the stevedore's men intended to take sole control. Had he insisted on the use of lines to steady the boat, and the other men had refused, the fault must have been charged wholly upon the steamer's men. As he did not do so, I think the neglect must be considered as the neglect of both alike, and that he should recover, therefore, but half of his damages. An interlocutory decree may be entered accordingly, with costs, with an order of reference to compute the amount, if not agreed upon.